UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CHERYL A. BOUDREAUX** | **CIVIL ACTION** |
| **VERSUS** | **NO:      05-0115** |
| **JOANNE B. BARNHART,**<br>**COMMISSIONER OF SOCIAL SECURITY** | **SECTION: "B" (4)** |

**REPORT AND RECOMMENDATION**

## I.   Introduction

This is an action for judicial review of a final decision of the Commissioner of Social Security pursuant to **Title 42 U.S.C. § 405(g)**. The Commissioner denied Cheryl Boudreaux's claim for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. § 423.

The matter was referred to the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(b) and Local Rule 19.02E(b), for the submission of Proposed Findings and Recommendations.

## II.   Factual Summary

On August 8, 2002, Boudreaux filed an application for Disability Insurance Benefits alleging disability since January 1, 2002, because of a leaking aortic heart valve, uncontrollable high blood pressure, migraines, shortness of breath, fatigue and anxiety. (Tr. 17-18). After the Social Security Administration denied her claims initially and on reconsideration, a hearing was held before

Administrative Law Judge Fred Gatzke ("ALJ") in New Orleans, Louisiana on July 29, 2004. (Tr. 16). After the hearing, the ALJ issued a decision on July 29, 2004, concluding that Boudreaux was not disabled within the meaning of the applicable regulations. (Tr. 11-16). In so doing, he found that Boudreaux had a history of transient ischemic attacks, migraine headaches, hypertension, and mild depression which were more than non- severe citing *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985). (Finding 3, Tr. 15).

However, he further found that Boudreaux's impairments and/or combination of impairments did not meet or equal the criteria of any impairment in the Listing of Impairments found in Appendix 1 Subpart P Regulation No. 4, including, but not limited to, 12.04, the relevant section for affective disorders. (Finding 4, Tr. 15); *see generally* 20 C.F.R. Pt. 404 Subpt. P App. 1. The ALJ further found that Boudreaux's assertions of pain, functional limitations and complete inability to do work were not substantiated by the evidence and thus she was not credible. (Finding 5, Tr. 15).

The ALJ also found that Boudreaux had the residual functional capacity to do sedentary work and that her impairments did not preclude her from doing her past relevant work as a cashier or receptionist. (Finding 5 and 6, Tr. 16)

On review, Boudreaux asserts two errors:

1. That the ALJ erred when he failed to give proper weight to the treating physician's Medical Assessment.

2. That the ALJ erred when he concluded that her allegations of pain were not credible.

### III. Standard of Review

The role of the Court on judicial review under Title 42 U.S.C. § 405(g) is limited to determining whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence. *See Brown v. Apfel*, 192


F.3d 492, 496 (5th Cir. 1999).  The Court may not re-weigh the evidence, try issues *de novo* or substitute its judgment for that of the Secretary.  *See id.*  If supported by substantial evidence, then the Secretary's findings are conclusive and must be affirmed.  *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  *See also Wilkinson v. Schweiker*, 640 F.2d 743, 744 (5th Cir. 1981).

"Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion."  *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).  "It is more than a mere scintilla and less than a preponderance."  *Id.*  It must do more than create a suspicion of the existence of the fact to be established, and no "substantial evidence" will be found only when there is a "conspicuous absence of credible choices" or "no contrary medical evidence."  *Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973); *Hemphill v. Weinberger*, 483 F.2d 1137, 1138 (5th Cir. 1973).

The concept of disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted  . . . for a continuous period of not less than twelve months."  42 U.S.C. §§ 416(i)(1), 423 (d)(1)(A).  Section 423(d)(3) of the Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

In determining whether a claimant is capable of engaging in any substantial gainful activity, the Secretary applies a five-step sequential evaluation process.  The rules governing the steps of this evaluation process are:  (1) a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be

found to be disabled unless he has a "severe impairment"; (3) a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that he has done in the past must be found "not disabled"; and (5) if a claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work. *See Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).

The burden of proof is on the claimant for the first four steps, but shifts to the Secretary at step five. *See Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).

**IV.  Analysis**

    **A.  Proper Weight to treating Physician Medical Assessment**

Boudreaux contends that the ALJ stated that the medical opinion of Dr. Baez was not supported by the record yet failed to explain why he discounted the doctor's opinion.  She further contends that the doctor's opinion is supported by the evidence such that the ALJ erred when he failed to give the proper weight to the treating physician's assessment of her disability.

The Commissioner contends that the ALJ considered Dr. Baez's opinion regarding Boudreaux's status but found that the opinion was not supported by the record.  The Commissioner further contends that the ALJ is not required to give controlling weight to the ultimate opinion that a claimant is disabled. The Commissioner further contends that the ALJ's finding that Dr. Baez's opinion should not be given controlling weight is supported by substantial evidence.

Under the regulations, a treating physician may offer an opinion which reflects a judgment about the nature and severity of the claimant's impairments including the claimant's symptoms,

diagnosis and prognosis, and any physical or mental restrictions. *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); *Castellano v. Sec. of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. § 404.1527(a)(2). The ALJ is to give controlling weight to that type of opinion if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . . other substantial evidence." *Martinez*, 64 F.3d at 176 (*citing* 20 C.F.R. § 404.1527(d)(2)). However, the ALJ is responsible for determining whether a claimant is disabled within the meaning of the regulations. *Id.*

The ALJ may disregard the opinion of a treating physician if it is conclusory and unsupported by medical evidence. If the ALJ disregards the treating physician's opinion, the ALJ must articulate "specific, legitimate reasons" for doing so. *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987).

Further, the Fifth Circuit held in *Newton v. Apfel* that an ALJ must perform a detailed analysis of each of the Section 404.1527(d)[1] factors before declining to give any weight to the opinion of the claimant's treating specialist. *See* 209 F.3d 448 (5th Cir. 2000).

According to the record, Dr. Baez a physician at Ochsner Clinic Foundation, wrote a generalized letter indicating that Boudreaux suffers from cluster migraines which are "the disabling type with poor results to medications." (Tr. 270). He noted that she suffers from Malignant Hypertension and that the therapy treatments have been jeopardized because of poor compliance, and caffeine and nicotine abuse. *Id.* The report further indicates that Boudreaux is resistant to

---

[1] *See* 20 C.F.R. § 404.1527(d)(2). Specifically, this regulation requires consideration of: (1) the physician's length of treatment of the claimant, (2) the physician's frequency of examination, (3) the nature and extent of the treatment relationship, (4) the support of the physician's opinion afforded by the medical evidence of record, (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician. *Newton,* 209 F.3d at 453.

medication, will not take anti-depressants and failed multiple treatments. *Id.* He concluded that she needed rest from work, that she could not work even at a sedentary level due to pain medications and frequent doctors visits and is "totally disabled." *Id.*

Dr. Baez also indicated that the migraines Boudreaux experiences impair her ability to think, concentrate and make daily decisions. (Tr. 282). He stated that her hypertension affects her ability to exercise or work. *Id.* He also stated that she suffers from fibromialgia and depression with anhedonia. and noted that she was withdrawn. *Id.* Finally, he noted that she has failed to take prescribed antidepressants and was unable to maintain a job. *Id.*

The record shows that on August 18, 2003, Boudreaux was discharged from Slidell Memorial Hospital where she was instructed to keep a diary of her headaches. (Tr. 142). The special instructions on the form show that she was experiencing severe pain which was not relieved by medication. *Id.* The form further indicates that she was restricted to sedentary activities. *Id.* She was also prescribed Vicodin ES to treat her complaints of chronic plain. *Id.* She was referred to Dr. Fischer for two weeks for chronic headaches. *Id.*

The medical records further show that the Vicodin ES would decrease and/or relieve the headache complaints that Boudreaux reported. Boudreaux even reported to the pain management personnel that pain medicine relieved her pain. (Tr. 186). Her statement in that regard is supported by the record as she complained of a headache at 7:30 and reported that it was relieved by 8:30 *Id.* So while Dr. Baez concluded that Boudreaux suffered from chronic pain which was not relieved by pain medication, the medical records show otherwise. Further, she indicated that over the medication relieved her headaches. (Tr. 125).

Boudreaux next suggests that her ability to concentrate and make daily decisions were

impacted by her medical condition.  The medical records show that on January 9, 2003, when she saw Dr. Gary Carroll he concluded that her memory and insight were intact.  (Tr. 127).  Further, when she was examined by Dr. Eleanor Krimerman, on January 4, 2004, the doctor noted that Boudreaux was alert, could concentrate adequately for the evaluation and was cooperative.  (Tr. 296).  She could recall six digits forward and four in reverse when asked.  She could also subtract backwards from twenty by threes, and understood the instructions without making mistakes.  (Tr. 296).  She was able to concretely interpret a proverb and her recent and remote memories were adequate for giving a history.  (Tr. 296).  Thus, the record shows that Boudreaux had the ability to concentrate contrary to the conclusion of Dr. Baez such that the ALJ's decision to reject Dr. Baez's opinion is supported by the evidence.

Finally, Boudreaux contends that the ALJ erred when he rejected Dr. Baez's opinion that her depressive symptoms left her withdrawn and further limited her ability to perform even sedentary activity.  Boudreaux contends that Dr. Baez's opinion is supported by the medical record of Dr. William Bloom of December 5, 2003, her treating psychiatrist, when he diagnosed her with recurrent major depression, anxiety disorder and psychological factors affecting her physical condition.  ( Tr. 286-289).  Dr. Bloom prescribed Lexapro to treat Boudreaux's depression.  *Id.* at 289.

Just one month later, the record shows that Boudreaux stopped taking the medication Dr. Bloom prescribed to treat her depression.  (Tr. 295).  She told Dr. Krimerman that she stopped taking Lexapro and Dr. Krimerman noted that Boudreaux needed to resume taking the prescribed medication.  *Id.*  Dr. Krimerman also noted that her ability to relate to others was fair and her activities were mild to moderately severely constricted.  (Tr.297).

The record shows that even though she was prescribed medication to help her restore and improve her daily activities, she chose not to take it. Naturally, her symptoms would not likely improve as two doctors concluded that she needed to take Lexapro and she would not do so. *See Johnson v. Sullivan,* 894 F.2d. 683, 685 n.4 (5th Cir. 1990) (failure to follow treatment is grounds for finding a claimant not disabled). The record evidence shows that the ALJ gave proper weight to Dr. Baez's medical assessment such that his decision is based upon substantial evidence.

### B.     Plaintiff's Credibility

Boudreaux next contends that the ALJ erred when he concluded that her pain allegations lacked corroboration or substantiation in the medical evidence, and were inconsistent or contradictory. (Tr. 10). She contends that the medical records support her complaints and testimony regarding chronic pain. Boudreaux further contends that the ALJ failed to give credible reasons for his finding.

The Commissioner contends that the ALJ properly weighed the evidence, and reviewed the record such that his credibility finding is based upon substantial evidence.

In assessing the credibility assertions of disabling pain, the ALJ can consider the following factors: (1) the onset of pain is related to a precise event;[2] (2) whether there are consistent notes of pain in the medical record, including diagnosis and prescription of pain medications;[3] and (3) there is a consistency with the medical evidence.[4] *See Francois v. Bowen*, 158 F.Supp.2d 748, 763-764 (E.D.La. 2001). The ALJ may not ignore the subjective complaints of the claim if supported by

---

[2]Pain constitutes a disabling condition when it is "constant, unremitting, and wholly unresponsive to therapeutic treatment." *See Selders v. Sullivan,* 914 F.2d 614, 618 (5th Cir. 1990).

[3]*See Carpenter v. Heckler*, 733 F.2d 591, 592-93 (8th Cir. 1984).

[4]*See Holland v. Heckler*, 768 F.2d 277, 281 (8th Cir. 1985).

medical signs and findings.  *Veal v. Bowen,* 833 F.2d 693, 698 (7th Cir. 1987).

Mild or moderate pain does not render a claimant disabled.  *See Richardson v. Bowen*, 807 F.2d 444, 448 (5th Cir.1987).  Further, subjective evidence need not take precedence over objective evidence.  *See Hollis v. Bowen*, 837 F.2d 1378, 1385 (5th Cir. 1988).  Moreover, a fact finder's evaluation of the credibility of subjective complaints is entitled to judicial deference if supported by substantial record evidence.  *Id.* at 1384.

According to the record, the ALJ found that Boudreaux's testimony was not totally credible as it could not be substantiated by the record, was inconsistent and/or contradictory.  The record shows that pain medication relieved Boudreaux's pain symptoms.  (Tr. 186).  She reported that she had for several months in January 9, 2003 been taking over the counter pain medication which relieved her pain.  (Tr. 125).

Further, Dr. Carroll found that she had no functional limitation involving her cardiovascular or respiratory systems, no neurologic deficits and no functional limitations related to her bones or joints and no psychiatric disability.  (Tr. 129).  During the hearing, Boudreaux's functional limitations were submitted to the vocational expert for consideration who opined that a person with her functional capacity had the ability to perform her past relevant work as a receptionist or cashier. (Tr. 343).

The Court notes that in reaching his conclusion the ALJ pointed to the medical evidence and testimony as the basis for determining that Boudreaux lacked credibility.  The Court finds that the ALJ's conclusion is based upon substantial evidence

**V.    Recommendation**

It is the **RECOMMENDATION OF THIS COURT** that the ALJ's decision denying Cheryl

Boudreaux's claim for Disability Insurance Benefits be **AFFIRMED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a Magistrate Judge's Report and Recommendation **within ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court, provided that the party has been served with notice that such consequences will result from a failure to object.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 15th day of September 2006.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**